IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARILYN CUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-cv-193-GMB |
| | ) | [WO] |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

Plaintiff Marilyn Cutler filed this action on March 22, 2016, seeking judicial review of a final adverse decision of the Commissioner of Social Security denying her application for a period of disability, disability insurance benefits, and supplemental social security income under Titles II and XVI of the Social Security Act. Doc. 1. The case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties have consented to the entry of a final judgment by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and Rule 73.1 of the Local Rules for the United States District Court for the Middle District of Alabama. Docs. 9 & 10. Based upon a review of the parties' briefs, the evidentiary record, and the relevant

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security, as the defendant in this lawsuit. No further action needs to be taken to continue this lawsuit pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The Clerk of Court is DIRECTED to take the appropriate steps to reflect this change on the docket sheet.

authority, the court finds that the Commissioner's decision is due to be AFFIRMED, as set forth below.

## I. STANDARD OF REVIEW

The court reviews a social security case to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (internal quotation marks omitted). Indeed, the court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

"Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Jones ex rel. T.J.J. v. Astrue*, 2011 WL 1706465, at *1 (M.D. Ala. May 5, 2011) (citing *Lewis*, 125 F.3d at 1440). The court must scrutinize the entire record to determine the reasonableness of the decision reached. *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). "If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as a finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision." *Jones*,

2011 WL 1706465, at *2 (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991)). The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991); *Jones*, 2011 WL 1706465, at *2 (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Cutler bears the burden of proving that she is disabled, and she is responsible for producing evidence to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence:

> (1) Is the claimant presently unemployed?
> (2) Is the claimant's impairment severe?
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform his or her former occupation?
> (5) Is the claimant unable to perform any other work within the economy?

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III. DISCUSSION

**A.   Facts**

Cutler applied for disability benefits on May 31, 2014, alleging a disability onset date of February 25, 2014. Doc. 14-2. Cutler alleges disability due to a brain contusion, slow speaking, memory loss, cervical stenosis, post-traumatic stress disorder, a knee contusion, and pain in her neck, back, and knee. Docs. 14-2, 14-3 & 14-4. Cutler's claims were denied at the initial administrative level. Docs. 14-2, 14-3 & 14-4.

Cutler requested a hearing before an Administrative Law Judge ("ALJ"), and she received two of them. Docs. 14-2 & 14-4. The first hearing was held on March 2, 2015. Doc. 14-2. During that hearing, the ALJ explained that, despite Cutler's claims that she cannot work, there was presently no medical evidence before him to establish disability.

Doc. 14-2. Cutler's non-attorney representative "concur[red]" with this assessment.[2] Doc. 14-2. However, rather than deny Cutler's claims at that point, the ALJ ordered Cutler to undergo a neurological consultative examination with NCV and EMG[3] testing, and he agreed to make his final decision after reviewing the results of those tests. Doc. 14-2.

Dr. Larry Wayne Epperson performed this exam. Docs. 14-2 & 14-8. After receiving the results, the ALJ held a second hearing on June 1, 2015, and he subsequently denied Cutler's claims in a written decision dated September 23, 2015. Doc. 14-2. In his decision, the ALJ found that Cutler had the severe impairments of obesity, hypertension, cervicalgia, history of lumbago, mild foraminal stenosis of the cervical spine, history of small bone contusion of the left knee, and history of laceration of the head, but that none of those impairments or combination of those impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 & 416.926). Doc. 14-2. The ALJ determined that Cutler had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c).[4]

---

[2] During the March 2, 2015 hearing, the ALJ asked Cutler's representative, "What do I have that tells me, specifically, that this young lady is unable to work from a documentary standpoint?" Doc. 14-2 at 48. In response, Cutler's representative stated, "Short of the positive MRI report showing the stenosis of her spine, judge, there's not much medical evidence in there to support." Doc. 14-2 at 48. Later in the hearing, the ALJ stated, "What I have in the file right now does not tell me that this young lady is disabled," to which Cutler's representative responded, "I concur, judge." Doc. 14-2 at 52.
[3] NCV stands for nerve conduction velocity and EMG stands for electromyography.
[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

5

Ultimately, based on these findings, the ALJ concluded that Cutler was not disabled within the meaning of the Social Security Act and denied her claims. Doc. 14-2.

Cutler requested a review of the ALJ's decision by the Appeals Council. That request was denied on January 28, 2016, making the ALJ's decision the final decision of the Commissioner as of September 23, 2015. Doc. 14-2. Cutler was 36 years old at the time of the ALJ's decision.

**B.     Issues Presented**

Cutler presents two issues for the court's review: (1) whether the ALJ properly addressed the medical opinion of Dr. Epperson, and (2) whether the ALJ properly considered the side effects of Cutler's medications on her ability to work.[5] Doc. 12. For the reasons that follow, the court finds that neither issue merits reversal, and the ALJ's decision is due to be affirmed.

**C.     Analysis**

    **1.     The ALJ properly addressed the medical opinion of Dr. Epperson.**

Cutler was involved in a motor vehicle accident on February 25, 2014. She was treated at Shelby Baptist Medical Center emergency room and diagnosed with a traumatic hematoma of the forehead, abrasions in multiple places, right wrist pain, and pain in her lower left leg. Doc. 14-8 at 429. Her radiology results were unremarkable. Her brain CT showed only an extracranial hematoma on the left forehead/scalp with no acute findings;

---

[5] These are the issues as presented by Cutler in her brief. *See* Doc. 13 at 4. Any issue she has not raised is deemed to be waived. *See Dial v. Berryhill*, 2017 WL 459859, at *3 (M.D. Ala. Feb. 2, 2017) (citing *Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x 882, 885 (11th Cir. 2011) (concluding in a social security case that issues not raised before the district court are waived)).

her cervical spine CT showed no acute findings; and her left tibia and fibula and right wrist x-rays showed no acute findings. Doc. 14-8 at 430–32. Cutler was prescribed muscle relaxers and pain medications and discharged the same day with instructions to follow up with her primary care physician. Doc. 14-8 at 444.

Following her discharge, Cutler was treated on multiple occasions for pain in her neck, back, fingers, and knee. Docs. 14-7, 14-8 & 14-9. On February 27, 2014, Cutler was treated by her primary care physician for cervicalgia, pain in her joints, lumbago, and pain in her shoulder, lower leg, and around her eye. Doc. 14-7 at 314–16. Again, her radiology results were largely unremarkable.[6] Doc. 14-7 at 330–31.

From March 4 to May 12, 2014, Cutler was treated by Dr. Gilberto Sanchez for complaints of neck, back, eye, and knee pain. Doc. 14-7 at 345–58. Dr. Sanchez ordered Cutler to complete twelve weeks of physical therapy and prescribed her pain medications. Doc. 14-7 at 345–46. He also ordered several diagnostic tests, including a CT scan of Cutler's head and an MRI of her lumbar and cervical spine, left knee, left hand, and brain. Doc. 14-7 at 345–58. The CT scan of her head showed only left frontal scalp swelling with no acute findings; her cervical spine MRI showed only mild C3-5 bony foraminal stenosis with no other acute injury; and her knee MRI showed a small bone contusion lateral tibial plateau but no fracture. Doc. 14-7 at 353, 355 & 357. The other MRIs were unremarkable. Doc. 14-7 at 354, 356 & 358. Cutler's last appointment with Dr. Sanchez was on May 12, 2014, during which he noted that she had completed three months of physical therapy and

---

[6] Cutler's L/S spine x-ray was normal with no acute findings. Doc. 14-7 at 330. Her cervical spine x-ray was abnormal but only to the extent it showed decreased normal curvature. Doc. 14-7 at 331.

while she still complained of neck pain, "her overall symptoms regarding MVA, have subsided." Doc. 14-7 at 352. Dr. Sanchez discharged Cutler from his care with instructions to follow up with her primary care physician. Doc. 14-7 at 352.

Cutler was employed as a dietary aide of the time of her accident. Doc. 14-2. The record reflects that Dr. Sanchez gave Cutler work excuses on two occasions. The first excuse covered one week of work. Doc. 14-7 at 346. The record reflects that a second excuse was written but does not specify the length of time it covered. Doc. 14-7 at 347. Despite the record reflecting only that Cutler was excused from work for at least one week, she admittedly never attempted to return to work after exhausting 12 weeks of medical leave because she "felt like [she] wasn't able to go any further with it." Doc. 14-2.

Cutler's physical therapy ended on June 19, 2014, after which she did not receive any medical care for her alleged disabling conditions until March 9, 2015, when she presented to Prattville Baptist Hospital emergency room after she slipped and fell at a casino. Docs. 14-7 at 242–43 & 14-9 at 560–74. Cutler was alert and oriented at the emergency room, and her x-rays from that event were unremarkable. Doc. 14-9 at 560–74. This fall occurred only a few days after Cutler's March 2, 2015 hearing before the ALJ during which she claimed to have such severe "nerve problems" that she can do essentially "nothing" with her right side and that her neck will "freeze up" on her. Doc. 14-2 at 49. On March 22, 2015, Cutler returned to Prattville Baptist Hospital emergency room for a cervical stenosis flare up with pain in her neck, lower back, and numbness down her right side. Doc. 14-9 at 535. Cutler did not report fatigue at this visit and was described as alert. Doc. 14-9 at 535–37. She was discharged the same day and prescribed medication. Doc.

8

14-9 at 535–37.

During Cutler's March 2, 2015 hearing, the ALJ noted the lack of evidence supporting her disability claims. Doc. 14-2. However, rather than dismiss her claims, the ALJ ordered Cutler to undergo a neurological consultative examination, which was performed by Dr. Epperson. Doc. 14-2. Dr. Epperson, who examined Cutler on this one occasion, opined that she had an impairment of 20% of the whole person (8% impairment of the cervical spine, 8% impairment of the lumbar spine due to spasm, and 4% impairment of gait because she was dragging her right leg). Doc. 14-8 at 519. Dr. Epperson also completed a Medical Source Statement in which he opined that Cutler could lift and carry up to 50 pounds occasionally; could sit, stand, and walk a total of 8 hours at one time without interruption and 8 total hours in the work day; could reach, handle, finger, feel, push, and pull occasionally; could operate foot controls with her right foot frequently and her left foot occasionally; could climb stairs, ramps, ladders, and scaffolds and balance, stoop, kneel, crouch, and crawl occasionally; and could work in humidity and wetness, dust, odors, fumes, extreme heat and cold, and vibrations occasionally. Doc. 14-8 at 521–25. Dr. Epperson also concluded that Cutler could shop, travel without a companion, ambulate without assistive devices, walk a block on uneven terrain at a reasonable pace, use standard public transportation, climb a few steps at a reasonable pace, prepare a simple meal and feed herself, care for her personal hygiene, and sort and handle paper files, but she could never work at unprotected heights, with moving mechanical parts, or operate a motor vehicle. Doc. 14-8 at 521–26.

Dr. Epperson formed these opinions, including Cutler's 20% total disability rating

and her various postural, manipulative, and environmental limitations, despite acknowledging in his own treatment records that the MRI of Cutler's brain was grossly normal, her head CT showed only a small scalp hematoma, and her cervical spine MRI showed mild bony foraminal stenosis at C3-C5, "which is an old finding." Doc. 14-8 at 518. Indeed, Dr. Epperson's own objective NCV and EMG results led him to conclude that "there is no electrophysiological evidence of a bilateral C5-C8 radiculopathy, bilateral carpal tunnel syndrome, a bilateral ulnar neuropathy, bilateral tardy ulnar palsy, or a diffuse sensorimotor peripheral neuropathy in the right or left upper extremities." Doc. 14-8 at 510. X-rays obtained two days after Dr. Epperson's exam were also unremarkable except for "minimal posterior spurring on C2, C3 and C4." Doc. 14-8 at 531. Apart from Dr. Epperson's opinion, there is no other evidence or opinion from Cutler's physicians suggesting that she is disabled—much less disabled to the degree she claims. Docs. 14-7, 14-8 & 14-9.

Against this backdrop, the ALJ considered but ultimately rejected Dr. Epperson's opinions, stating:

> The undersigned ordered a physical consultative examination, which the claimant attended on March 18, 2015 (Exhibit 8F). The claimant discussed her motor vehicle accident on the alleged onset date and reported ongoing pain in her neck as well as burning, tingling, and numbness affecting her right side. Larry Epperson, M.D., assessed hypertension, cervicalgia, and chronic pain; however, his objective findings of his examinations were unremarkable. Indeed, the only abnormalities he detected were spasms in the claimant's neck and lumbar area along with an antalgic gait due to her "dragging her right leg." He noted that diagnostic tests administered in March 2014 shortly after the claimant's accident, including MRI's of her brain, lumbar, and cervical spine yielded normal findings except **mild** bony foraminal stenosis and scalp swelling. . . .

> Given the claimant's neurological allegations, here, Dr. Epperson conducted nerve conduction studies and electromyography, which determined, "**there is no electrophysiological evidence of a bilateral C5-C8 radiculopathy, bilateral carpal tunnel syndrome, a bilateral ulnar neuropathy, bilateral tardy ulna palsy, or a diffuse sensorimotor peripheral neuropathy in the [the claimant's] right or left uppers extremities**" (Id. at pgs. 2–5) (emphasis added).
>
> In conjunction with this examination, Dr. Epperson completed a medical source statement ("MSS") finding that the claimant could lift and carry up to 50 pounds without any restrictions in sitting, standing, or walking in a normal 8-hour workday. He indicated that she did *not* need an assistive device and could perform activities like shopping, walk a block on uneven terrain, climb a few stairs, prepare a simple meal and feed herself, care for her personal hygiene, and go out independently. Rather perplexingly, Dr. Epperson indicated that the claimant had several postural, manipulative, and environmental limitations (Id. at pgs. 13–18). Though none of these limitations suggested a finding of disability, the undersigned still afforded them no weight, particularly since Dr. Epperson offered no explanation for these findings that so blatantly contravened the objective results of the aforementioned examination, wholly normal neurological findings, and longitudinal medical record.

Doc. 14-2 at 28–29. Ultimately, the ALJ concluded that "neither the objective medical evidence, nor the claimant's objectively unsupported documentary and testimonial statements establishes that her ability to function has been so severely eroded as to preclude all work activity." Doc. 14-2 at 29.

Cutler challenges the ALJ's rejection of Dr. Epperson's opinions (which would preclude a medium work RFC finding, if adopted), arguing that he failed to express adequate reasons for rejecting his opinions. The court finds no merit in this argument. "The ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion." *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 533 (11th Cir. 2014) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)). "In assessing medical

evidence, an ALJ is required to state with particularity the weight he gave the different medical opinions and the reasons therefor." *Id.* (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). However, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision enables the district court to conclude that the ALJ considered the claimant's medical condition as a whole. *Id.* Here, the ALJ adequately explained his reasons for rejecting Dr. Epperson's opinions, and his reasons are supported by substantial evidence.

As the ALJ detailed in his opinion and as the court referenced above, the postural, manipulative, and environment limitations Dr. Epperson placed on Cutler are contradicted by his own objective clinical findings and by the other medical evidence in the record, including multiple unremarkable MRI and CT exams and a history of conservative treatment of Cutler's ailments. Indeed, Dr. Epperson noted that several MRIs and other diagnostic tests performed shortly after Cutler's accident yielded normal findings apart from mild bony foraminal stenosis and scalp swelling. Despite these unremarkable diagnostic findings, Dr. Epperson placed a number of postural, manipulative, and environmental limitations on Cutler's ability to perform work-related activities, but he provided no explanation for her postural and manipulative limitations and referred generally to his treatment notes—which appear to be based primarily on Cutler's subjective complaints rather than objective medical findings—to explain her environmental limitations. Ultimately, the ALJ rejected Dr. Epperson's limitations, finding that they "blatantly contravened the objective results of [his] examination, wholly normal neurological findings, and longitudinal medical record." Doc. 14-2.

The court agrees that Dr. Epperson's opinions were not supported by the objective, longitudinal medical evidence and his own clinical findings. Accordingly, the court finds that the ALJ adequately considered Dr. Epperson's opinions, that he adequately articulated his reasons for rejecting these opinions, and that these reasons are supported by substantial evidence. *See D'Andrea v. Comm'r of Soc. Sec. Admin.*, 398 F. App'x 944, 948 (11th Cir. 2010) (per curiam) (concluding that the ALJ had ample reason for rejecting consulting physician's RFC assessment when the physician's own clinical findings undermined the assessment).

### 2. The ALJ properly considered the side effects of Cutler's medications on her ability to work.

Cutler contends that the ALJ's decision should also be set aside because he failed to consider the side effects of her medication on her ability to work. The court is not persuaded by this argument. While Cutler did report in a disability report dated October 15, 2014 that her medications made her drowsy, dizzy, and sick, there is no indication in her medical records that she ever reported or complained about side effects of her medication to a health care provider or that her health care providers observed or noted any side effects of her medications. Doc. 14-6 at 278. To the contrary, in March 2015, Dr. Epperson described Cutler as "awake, alert and oriented x3," "good recent and remote memory, normal speech cadence and normal rhythm," and "good concentration and attention." Doc. 14-8 at 517. Several other medical providers described Cutler as alert and oriented during her post-accident visits. Docs. 14-7, 14-8 & 14-9. In fact, there is no

evidence in the record, other than Cutler's subjective claims, that her medications had disabling side effects.

The court is satisfied that the ALJ adequately considered the side effects of Cutler's medications on her ability to work. Indeed, the ALJ noted that the medical records showed that she had a good memory, good concentration and attention, and normal speech. The ALJ also accounted for any medication side effects in the hypotheticals given to the vocational expert, and the vocational expert's testimony with respect to jobs that Cutler could perform accounted for potential side effects.[7] Doc. 14-2 at 76. Although the ALJ's decision did not discuss medication side effects in great detail, he did note that Cutler testified at the June 1, 2015 hearing that she took pain medication and that it had alleged side effects, such as drowsiness. Doc. 14-2 at 29. However, the ALJ ultimately concluded that Cutler's testimony was not credible and was unsupported by the objective medical evidence. The court finds that, in doing so, the ALJ implicitly considered and found that Cutler's allegations of disabling medication side effects were not credible. *See Reed v. Colvin*, 2015 WL 12856783, at *8 (M.D. Fla. Apr. 21, 2015) (rejecting claimant's argument that ALJ failed to consider medication side effects when ALJ referenced claimant's medications and the record failed to show that claimant complained to physicians about side effects); *Tyson v. Comm'r of Soc. Sec.*, 2011 WL 1326833, at *6 (M.D. Fla. Apr. 6, 2011) (rejecting claimant's argument that ALJ did not consider side effects of medication when ALJ explicitly noted claimant's testimony that medications

---

[7] Cutler's representative did not object to any portion of the vocational expert's testimony and declined to examine the vocational expert. Doc. 14-2 at 77.

14

made her sleepy but ultimately found this testimony not credible because the medical records did not reflect any complaints from claimant about medication side effects); *see also Ledbetter v. Colvin*, 2015 WL 476219, at *5–6 (M.D. Ala. Feb. 5, 2015).[8] For these reasons, the court finds that the ALJ adequately considered the side effects of Cutler's medications on her ability to work and that this assessment is supported by substantial evidence.

### IV. CONCLUSION

Accordingly, for the reasons set forth above, it is ORDERED that the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

DONE this 25th day of August, 2017.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

---

[8] Moreover, even if the ALJ had erred in considering the side effects of Cutler's medications on her ability to work, she has failed to show that she was harmed by this error. *See Ledbetter*, 2015 WL 476219, at *6.